Superior Court of Buffalo. December Criminal Term, 1856.
*George W. Clinton*, Justice, presiding.

## The People *v.* Williams and White.

In an indictment for uttering and circulating as money foreign bank bills, and for receiving such bills with intent to circulate them, contrary to the provisions of section 2 of the act of May 7, 1839, as amended April 13, 1853, it is not sufficient to describe the defendants as officers of a bank or banking association, and then simply to charge that they did the acts complained of. It is necessary to allege a violation of the statute by the bank or association and that the defendants acted as such officers in doing the acts in question. As individuals, the defendants are not liable, unless they are "authorized to carry on the business of banking in this State," and where the intent is to charge them as such, an allegation bringing them within section 2 of the act of 1853 should be made in the indictment.

The indictment contained two counts. The first count charged that, on the first day of January, 1854, the defendant, Williams, was the cashier, and the defendant, White, the president of a banking association, organized under the act "to authorize the business of banking," and known as and called the White's Bank of Buffalo; "and that said White, being such president, and said Williams, being such cashier of said White's Bank of Buffalo, as aforesaid, *on the said* first day of January, 1852, at," &c., "unlawfully," &c., "did utter and circulate as money, and did aid and assist in the uttering and circulating as money," within the city of Buffalo, "one thousand different promissory notes, in the similitude of bank bills, purporting to have been issued by an association situated without the State of New York, to wit: at Toronto, in the Province of Upper Canada, called the Farmers' Joint Stock Banking Company, purporting to be signed by J. W. Sherwood, as president thereof, for the payment to the bearer on demand for divers different amounts and sums of money, a more particular description of which was to the jurors aforesaid unknown, and of the amount in the whole of $10,000." It then charged that " the aforesaid notes " " had not then and there, or before that time, been received by said White's Bank of Buffalo, at par, in

the ordinary course of the business of said White's Bank of Buffalo, contrary to the form of the statute," &c. The second count in like manner charged that, on the first day of January, 1853, the defendants were the president and cashier of the said White's Bank of Buffalo, a banking association, &c., and that, being such president and such cashier, on the first day of January, 1853, they "did unlawfully receive from some person or persons to the jurors aforesaid unknown, one thousand different bank bills, purporting to have been issued by an association situated out of the State, to wit: at Toronto, in the Province of Upper Canada, and purporting to be signed by J. W. Sherwood, as president thereof, for the payment of the sum of one dollar each bill to the bearer thereof on demand," and other similar bills of the denomination of $2, $3 and $5, "with the intent to utter and circulate, and with the intent to aid and assist in uttering and circulating" them as money within this State; "and that said bank bills had not been received by said White's Bank of Buffalo from its customers in the regular and usual course of its business, at a rate of discount not exceeding one-quarter of one per cent, against the form of the statute, &c. The defendants pleaded not guilty. The indictment came on to be tried, and a jury, for the trial thereof, was impanneled at the criminal term, on the 22d day of December, 1856, Mr. Justice *Clinton* presiding. After the district attorney had opened for the People, he consenting, the counsel for the defendants, Mr. Henry W. Rogers, moved the court to instruct the jury to acquit them, upon the ground that the indictment was substantially defective in certain particulars. After hearing Mr. Sawin (District Attorney), for the People, the court, the usual time for adjournment having arrived, adjourned for the day, and the next morning delivered its opinion as follows:

CLINTON, J. By section 1 of the act of April 13, 1853, amending the act of May 7, 1839, "concerning foreign bank notes," a new section 2 was substituted for section 2 of the original act. The new section declares that "it shall not be lawful for any incorporated banking institution within this

State, or any association, or any individual or individuals authorized to carry on the business of banking, by virtue of the act entitled 'An act to authorize the business of banking,'" &c., "to procure or receive any bank bill or note, or other evidence of debt in the similitude of a bank note, issued, or purporting to be issued, by any corporation, association or individual situated or residing without this State, at a greater rate of discount," &c. ; and that it shall not be lawful "for any banking institution, association, or individual or individuals," in the first part of the section mentioned, to issue, utter, or circulate as money, or in any way to aid or assist in the issuing, uttering or circulating as money, within this State, of any such bank bill, note, or other evidence of debt, issued, or purporting to have been issued by any " foreign corporation, association or non-resident individual, or to procure or receive any such bank bill, note or evidence of debt, with intent to issue, utter or circulate, or to aid or assist in issuing, uttering or circulating them as money within this State." The section contains a proviso that it shall not be construed to prohibit such banks, &c., from receiving and paying out such foreign bank bills as they shall receive at par in the ordinary course of their business.

By section 3 of the act of 1839, it is made unlawful for incorporated banks and associations, and individuals, authorized to carry on the business of banking under the act " to authorize the business of banking, to lend or pay out for paper discounted or purchased by them, any bank bill, note or other evidence of debt, which is not received at par by it or him."

Section 4 of that act imposes upon " every corporation, and every association and individual authorized to carry on the business of banking, who shall offend against any of the provisions of the previous sections of this act," a penalty of $1,000 for each and every offence, to be recovered by any person who shall prosecute therefor; and makes it a misdemeanor in any officer or clerk of any such bank or association, or in any individual banker, or his clerk or servant, "knowingly to act or assist in any violation of any provision of this act."

It is very plain that the officers of a bank or banking asso-

ciation are guilty of a misdemeanor, under section 2, only when they act or aid in the violation of that section by the bank or association. Neither count of this indictment charges any violation of this section by White's Bank of Buffalo. The defendants are described as officers of the association, but are not charged with doing any act as such officers. They are charged with the doing of acts, which, if they were at the time individuals doing business under the " act to authorize the business of banking," would subject them both to the penalty of $1,000, and to punishment for the misdemeanor, but they are not averred to have been individuals doing business under that act when they did the things set forth in the indictment. As an indictment then, under section 2 of the act of 1839, as amended in 1853, this indictment is fatally defective.

Section 2 of the act of 1853, apparently makes the acts touching the circulation of foreign bank notes by banks, banking associations and individual bankers, forbidden by its section 1, unlawful " for any person within this State," if the foreign bank bill, note or other evidence of debt in the similitude of a bank bill or note, " shall have been received by such person at a greater rate of discount than is or shall be at the time fixed by law for the redemption of the bills of the banks of this State at their agencies." Possibly this indictment might have been sustained under this section, had it charged, which it does not in either count, that the defendants had received the bank bills or notes at a greater rate of discount, &c.

Section 3 of the act of 1853, provides that " the penalties provided in section 4 of the act hereby amended, shall apply to any violation of this act." From the best examination we have been able to give this subject, we doubt very much whether the misdemeanors declared by section 4 of the amended act are tolled. But it is not necessary to pass upon this question, nor upon any of the minor objections to the indictment. The first ground taken by the counsel for the defendants is fatal. The indictment being for a misdemeanor, we think it right to direct the jury to bring in a verdict for the defendants, instead of quashing the indictment